PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 07 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10096
_____

D. C. Docket No. 98-00001-CV-5

RICHARD H. COTTON,

Plaintiff-Appellee,

versus

EDWARD D. JACKSON, JR., in his
Personal and in his Official Capacity
as President of South Georgia College,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____
**(July 7, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and STROM*, District Judge.

_____

*Honorable Lyle E. Strom, U.S. District Judge for the District of Nebraska, sitting by designation.

PER CURIAM:

Defendant, Dr. Edward D. Jackson, Jr., appeals from the district court's denial of his motion for summary judgment on the basis of qualified immunity on Plaintiff's procedural due process claim against Jackson. Because we conclude that Plaintiff has failed to state a procedural due process claim, we reverse.

## BACKGROUND

Plaintiff, Dr. Richard Cotton, was employed as the Director of Continuing Education for South Georgia College (SGC).  In June 1997, two employees of SGC filed complaints with the EEOC and the Georgia Commission on Equal Opportunity charging that their supervisor, Cotton, had sexually harassed them.  The President of SGC, Defendant Jackson, received the charges on 9 June 1997.  The next day, Defendant Jackson notified Plaintiff of the charges, suspended him with pay, and told him to stay off campus until the matter was resolved.  Plaintiff was told that he could file a response to the charges.

The SGC Director of Personnel/Affirmative Action Officer, Paula Dell-Beasley, conducted an investigation into the complaints.  Dell-Beasley also received sworn responses from Cotton about the claims.  Cotton alleges that he also told Dell-Beasley he wished to submit additional affidavits. But, before receiving the additional

2

affidavits from Cotton, Dell-Beasley submitted her findings to President Jackson. Dell-Beasley reported that Cotton had violated the sexual harassment policies of SGC and of the Board of Regents. Also, she said that Cotton had created a hostile work environment.

On 16 July 1997, President Jackson sent a letter to Cotton informing him that his employment would be terminated effective 31 July 1997 and that the terms of his suspension with pay would continue through that date. Upon receiving the termination letter, Cotton requested a hearing. President Jackson told Cotton that he would hold no hearing, but that Cotton could request that the Board of Regents exercise their discretion to review the decision. Cotton requested a discretionary review from the Board, which was denied. Cotton pursued no other remedies before instituting this case in federal court.

In addition, in response to the Equal Employment Opportunity Commission's and the Georgia Commission on Equal Opportunity's requests for the College's position on the sexual harassment complaints, President Jackson submitted, on 17 July 1997, four letters stating that "Dr. Cotton's actions in creating a hostile work environment are his own personal actions in direct violation of College policy and beyond the boundaries of his job responsibilities. South Georgia does not condone

Dr. Cotton's behavior." These documents were also allegedly placed in Dr. Cotton's personnel file.

Cotton sued Jackson and members of the Board of Regents of the University System of Georgia, in their individual and official capacities. His complaint asserted claims under state and federal law. Both parties moved for summary judgment, and the district court granted Defendants' motion on all claims except one: Plaintiff's section 1983 procedural due process claim that Defendants had deprived him of his liberty interest in his reputation without the opportunity for a name-clearing hearing. This interlocutory appeal concerns only the denial of summary judgment on qualified immunity grounds for Defendant Jackson.

DISCUSSION

We review the denial of summary judgment on qualified immunity grounds de novo and conduct a two-step inquiry. First, we ask whether the violation of a constitutional or statutory right was even alleged. Second, if a violation were alleged, we ask whether that right was clearly established at the time of the alleged violation. See Hartley v. Parnell, 193 F.3d 1263, 1268 (11th Cir. 1999) (quoting Wilson v. Layne, 119 S. Ct. 1692, 1697 (1999)).

Plaintiff claims that Defendant Jackson effectively ruined his reputation by labeling him as a sexual harasser and by terminating his employment without giving him an opportunity to be heard. We have said that -- although damage to reputation, standing alone, does not provide a basis for an action under 42 U.S.C. § 1983 -- when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983. See Campbell v. Pierce County, Ga., 741 F.2d 1342, 1344 (11th Cir. 1984)(citations omitted). To recover, a plaintiff must satisfy a six-factor test and show that "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." Warren v. Crawford, 927 F.2d 559, 565 (11th Cir. 1991) (quoting Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1042-43 (11th Cir. 1989)). The hearing can be held either before or after the termination or publication. See Harrison v. Wille, 132 F.3d 679, 683 n.9 (11th Cir. 1998).

In this case, we conclude that because adequate state remedies were available to provide Plaintiff with the opportunity for a name clearing hearing, he has failed to state a procedural due process claim. In McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994)(en banc), we said that "only when the state refuses to provide a process

5

sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."[1]  It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.  See id.; see also Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999);  Harris v. Board of Educ., 105 F.3d 591, 596 (11th Cir. 1997).  This rule (that a section 1983 claim is not stated unless inadequate state procedures exist  to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora -- agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation.  See McKinney, 20 F.3d at 1560; see also Horton v. Board of County Comm'ns, 202 F.3d 1297, 1300 (11th Cir. 2000).[2]

---

[1] Plaintiff argues that McKinney does not apply to this case because McKinney dealt with a property-interest procedural due process claim and this case deals with a liberty-interest procedural due process claim.  We see no reason for distinguishing between the two kinds of procedural due process claims. Cf. Zinermon v. Burch, 110 S. Ct. 975, 986-87 (1990). Furthermore, even if we did, we note that we have previously used the McKinney framework to decide cases alleging liberty-interest procedural due process claims.  See, e.g., Bass v. Perrin, 170 F.3d 1312, 1318-19 (11th Cir. 1999); Bussinger v. City of New Smyrna Beach, Florida, 50 F.3d 922, 925-26 (11th Cir. 1995).

[2] This directive is not an exhaustion requirement.  See McKinney, 20 F.3d at 1564 n.20; see also Bussinger, 50 F.3d at 925-26.  Instead, this directive is a recognition that procedural due process violations do not even exist unless no

Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, we -- when determining if a plaintiff has stated a valid procedural due process claim -- look to whether the available state procedures were adequate to correct the alleged procedural deficiencies. See McKinney, 20 F.3d at 1563; see also Bell v. City of Demopolis, Alabama, 86 F.3d 191, 192 (11th Cir. 1996); Narey v. Dean, 32 F.3d 1521, 1527-28 (11th Cir. 1994). If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. See McKinney, 20 F.3d at 1565 ("The fact that [McKinney] failed to avail himself of the full procedures provided by state law . . . does not constitute a sign of their inadequacy."); Bell, 86 F.3d at 192; Narey, 32 F.3d at 1528. And, to be adequate, the state procedure need not provide all the relief available under section 1983. See McKinney, 20 F.3d at 1564. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.

As applied to this case, our inquiry concerns whether adequate procedures were available to Plaintiff to protect his right not to be deprived of his liberty interest in his reputation by state action without the opportunity for a name-clearing hearing. The

---

adequate state remedies are available. See McKinney, 20 F.3d at 1562; Horton, 202 F.3d at 1301 (stating in dicta that exhaustion and ripeness are not the doctrines in play in assessing whether a procedural due process claim has been stated).

parties dispute whether, under Georgia law, adequate remedies were available. We think that there were.

Defendant initially contends that certiorari to the state courts was available to Plaintiff and that this process was an adequate state remedy. We agree with Defendant that certiorari is generally an adequate state remedy. See Narey, 32 F.3d at 1527 (review by Georgia courts of state agency's employment decisions is an adequate remedy); see also Bell, 86 F.3d at 192 (certiorari is adequate remedy under Alabama law); McKinney, 20 F.3d at 1563 (same under Florida law). But we disagree with Defendant that this remedy was available to Plaintiff.

Under Georgia law, certiorari only lies to correct the errors committed "by any inferior judicatory or any person exercising judicial powers." O.C.G.A. § 5-4-1(a). To determine if certiorari lies we must decide whether Defendant Jackson's or the Board's acts were judicial or quasi-judicial or whether they were administrative or legislative. See Mack II v. City of Atlanta, 489 S.E.2d 357, 359 (Ga. Ct. App. 1997).

The basic distinction, under Georgia law, between an administrative and a judicial act by officers other than judges is that:

> [A] quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken . . . . [T]he test is whether the parties at interest had a

8

right under the law to demand a trial in accordance with judicial procedure.

Id. at 359 (quoting South View Cemetery Ass'n v. Hailey, 34 S.E.2d 863 (Ga. 1945)(citations omitted)).

In this case, none of the acts in question -- the termination of Plaintiff's employment without a hearing and the Board's later denial of Plaintiff's request for a hearing -- were judicial acts. Plaintiff was not, as a matter of state law, entitled to notice and a hearing before these acts were taken. He was not given the opportunity to present evidence to the decision makers under judicial forms of procedure prior to these acts being taken. Plaintiff had no right to demand a trial in accordance with judicial procedure. In the light of Georgia authority, we conclude that the acts in question were not in the nature of judicial acts. See Starnes v. Fulton Co. Sch. Dist., 503 S.E.2d 665, 666-67 (Ga. Ct. App. 1998); Board of Comm'rs v. Farmer, 493 S.E.2d 21, 26 (Ga. Ct. App. 1997); Georgia Farm Bureau Mut. Ins. Co. v. DeKalb Co., 306 S.E.2d 924, 926 (Ga. Ct. App. 1983). Accordingly, the remedy of certiorari was unavailable to Plaintiff.

Just because under Georgia law certiorari will not lie does not mean that there were no adequate state procedures available to Plaintiff. We will assume that Plaintiff

is correct in arguing that no other specific legal remedies are available to him.[3]  In these circumstances, we believe that Plaintiff would be entitled to seek a writ of mandamus.  Under Georgia law, when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek mandamus.  See O.C.G.A. § 9-6-20.  And, although mandamus will not normally issue to compel the performance of a discretionary act, it is available when an official abuses his discretion.  See Dickerson v. Augusta-Richmond County Comm'n, 523 S.E.2d 310 (Ga. 1999); Kitchens v. Richmond County, 515 S.E.2d 143, 144 (Ga. 1999).  As is true in federal courts, see Alexander v. Fulton County, 207 F.3d 1303, 1326 (11th Cir. 2000), a clear error in judgment or the application of an incorrect legal standard is an abuse of discretion, see Wilson v. State Farm Mut. Auto. Ins. Co., 520 S.E.2d 917, 920 (Ga. Ct. App. 1999).

If Plaintiff were without another legal remedy and proved in a state mandamus proceeding that Defendants had deprived Plaintiff of his federal liberty interest in his

_____

[3]  Although we express no opinion on the availability of other remedies under Georgia law, we note that, even if other state law remedies are available to Plaintiff (for example, a state law defamation claim or an action seeking a declaratory judgment), our ultimate conclusion would not change.  The availability of those remedies, if they are adequate to protect Plaintiff's right to have a name-clearing hearing, would preclude a procedural due process claim.  And, if they are inadequate to protect Plaintiff's right to a hearing, then mandamus would still be available to Plaintiff, and he would be precluded from bringing a procedural due process claim.

reputation without a hearing, then Plaintiff would have shown that he had a clear legal right to a name-clearing hearing. Therefore, Plaintiff would have been entitled to an order of mandamus directing Defendants to hold a name-clearing hearing (assuming that the mandamus proceeding was not itself a sufficient name-clearing hearing to satisfy due process). Cf. Sego v. City of Peachtree City, 392 S.E.2d 877, 878 (Ga. 1990) (when city fails to issue license under circumstances which constitute an equal protection violation, mandamus is available remedy); See also Camden County v. Haddock, 523 S.E.2d 291, 293 (Ga. 1999) (noting that because employee alleging that she had been terminated in violation of due process had adequate legal remedy, including administrative appeals and certiorari, mandamus was not available); Tompkins v. Board of Regents, 417 S.E.2d 153, 154 (Ga. 1992) (affirming trial court's denial of petition for mandamus where petitioner alleged that Board of Regents had acted illegally in denying his petition for review and not giving petitioner a hearing on his termination and where court found that Board had not acted illegally); Dalton City Board of Educ. v. Smith, 349 S.E.2d 458, 459 (Ga. 1986) (reversing grant of petition of mandamus ordering school board to hold hearing regarding non-renewal of teacher's contract where there was no evidence that the school board had acted illegally); South View Cemetary Ass'n v. Hailey, 34 S.E.2d 863, 867 (Ga. 1945) (stating that where petitioner is entitled to a certain right and the

11

remedy of certiorari is unavailable to him because there has been no judgment from which certiorari would lie, that would be such a defect of justice that petitioner would be entitled to mandamus to compel the granting of the right even though the act of denying the right may have been discretionary in the first instance).

Because we believe that the writ of mandamus would be available under state law to Plaintiff, and because we believe that mandamus would be an adequate remedy to ensure that Plaintiff was not deprived of his due process rights, see Jackon v. City of Columbus, 194 F.3d 737, 751 (6th Cir. 1999), Collyer v. Darling, 98 F.3d 211, 227 (6th Cir. 1996), we conclude that Plaintiff has failed to show that inadequate state remedies were available to him to remedy any alleged procedural deprivations. Therefore, Plaintiff has failed to state a claim for a procedural due process violation, and Defendant was entitled to summary judgment. Accordingly, the district court erred in denying Defendant's motion for summary judgment. See Hartley, 193 F.3d at 1268.

REVERSED AND REMANDED.